**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STATE OF ARIZONA; TERRY L.
GODDARD, Attorney General for the
State of Arizona; ARIZONA
DEPARTMENT OF LAW, Civil Rights
Division,
 *Plaintiffs-Appellees*,

ANGELA AGUILAR,
 *Intervenor-Plaintiff–Appellee*,

v.

ASARCO LLC,
 *Defendant-Appellant*.

No. 11-17484

D.C. No.
4:08-cv-00441-
MWB

OPINION

Appeal from the United States District Court
for the District of Arizona
Mark W. Bennett, District Judge, Presiding

Argued and Submitted En Banc
June 18, 2014—Seattle, Washington

Filed December 10, 2014

Before: Sidney R. Thomas, Chief Judge, and Stephen
Reinhardt, Alex Kozinski, Barry G. Silverman, Ronald M.
Gould, Marsha S. Berzon, Richard R. Clifton, N. Randy

Smith, Mary H. Murguia, Morgan Christen, and Jacqueline
H. Nguyen, Circuit Judges.

Opinion by Chief Judge Thomas

**SUMMARY**[*]

**Title VII / Punitive Damages**

Affirming the district court's judgment, the en banc court
held that a $300,000 punitive damages verdict, in a Title VII
sexual harassment case in which only nominal damages were
awarded, comported with due process.

The en banc court concluded that punitive damages
awards conferred under 42 U.S.C. § 1981a, which imposes a
$300,000 cap on compensatory and punitive damages,
comport with due process because the statute's provisions
meet the constitutional concerns underlying *BMW of N. Am.,
Inc. v. Gore*, 517 U.S. 559 (1996). The en banc court stated
that the statute provides specific notice of proscribed conduct.
It specifies the maximum amount of damages that can be
awarded, and incorporates both specified compensatory and
punitive damages within the cap. The $300,000 dollar
amount of the cap provides an extremely limited potential for
recovery, and has not been changed, nor been adjusted for
inflation, since its adoption in 1991. As a result, and due to
the circumstances of this case, including the fact that the jury
awarded only nominal, and not compensatory damages, the

[*] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

en banc court declined to rigidly apply *Gore*'s three guideposts to the award in this case. The en banc court affirmed the district court's conclusion that the punitive award was made in conformance with the statute and was not otherwise in violation of due process.

The en banc court held that the district court did not abuse its discretion in admitting evidence of sexually explicit graffiti.

The en banc court held that the district court did not abuse its discretion in awarding attorneys' fees to the plaintiff.

**COUNSEL**

David T. Barton (argued), Eric B. Johnson, and Brian A. Howie, Quarles & Brady LLP, Phoenix, Arizona, for Defendant-Appellant.

Thomas C. Horne, Ann Hobart, and Leslie Ross, Assistant Attorneys General, State of Arizona Department of Law, Civil Rights Division, Phoenix, Arizona, for Plaintiff-Appellee State of Arizona.

Eric Schnapper (argued), University of Washington Law School; Jenne S. Forbes, Waterfall, Economidis, Caldwell, Hanshaw & Villamana, P.C., Tucson, Arizona, for Intervenor-Plaintiff Appellee.

Julie L. Gantz (argued), Attorney, P. David Lopez, General Counsel, Lorraine C. Davis, Acting Associate General Counsel, Jennifer S. Goldstein, Acting Assistant General Counsel, Equal Employment Opportunity Commission,

Washington, D.C., for Amicus Curiae United States Equal Employment Opportunity Commission.

**OPINION**

THOMAS, Chief Judge:

This appeal presents the question of whether a $300,000 punitive damages verdict, in a Title VII sexual harassment case in which only nominal damages were awarded, comports with due process. Given the statutory scheme that governs punitive damages in Title VII cases and the circumstances of this case, we conclude that the award does not violate due process. We affirm the judgment of the district court.

I

ASARCO, LLC ("ASARCO") operates the Mission Mine complex in Sahuarita, Arizona, near Tucson. Mission Mine includes a copper mine from which copper ore is extracted and a mill facility in which the ore is crushed, filtered, and refined. Angela Aguilar worked at the Mission Mine complex from December 2005 through November 2006. She started as a mill laborer and became a car loader operator in March 2006. A month later, she then became a filter operator in the filter plant and two months later, a rod and ball mill person. Aguilar alleges that during her time at ASARCO, she was subjected to sexual harassment, retaliation, intentional infliction of emotional distress, and was constructively discharged from her employment.

The State of Arizona filed suit against ASARCO under the Arizona Civil Rights Act in Pima County Superior Court,

alleging harassment, disparate treatment, and retaliation against Aguilar. Aguilar subsequently filed her own lawsuit against ASARCO, alleging harassment, constructive discharge, and retaliation under Title VII. The proceedings were consolidated and removed to the United States District Court for the District of Arizona.

After an eight-day trial, the jury found ASARCO liable on Aguilar's sexual harassment claims, in violation of 42 U.S.C. § 2000e-2, but not on her constructive discharge or retaliation claims. The jury awarded no compensatory damages, but awarded $1 in nominal and $868,750 in punitive damages. The jury was instructed on the standard for granting punitive damages found in 42 U.S.C. § 1981a(b). Following the judgment, ASARCO filed a renewed motion for judgment as a matter of law, contending, in part, that the punitive damages award was unconstitutionally excessive. In the alternative, it urged the court to grant a new trial because of evidentiary errors.

The district court rejected the motion for judgment as a matter of law. Applying the due process analysis in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), it concluded the punitive damages award was not unconstitutional but, given the $300,000 cap on compensatory and punitive damages found in § 1981a(b)(3)(D), reduced the award to $300,000. The court also rejected ASARCO's new trial motion, and granted Aguilar's request for injunctive relief, directing ASARCO to update its harassment policies. Finally, the court granted Aguilar's motion for attorneys' fees and costs, in the total amount of $350,902.75.

ASARCO timely appealed, arguing that the district court erred by refusing to reduce the punitive damages award further, by admitting evidence of other employees who witnessed pornographic graffiti, and by awarding Aguilar attorneys' fees. A three-judge panel of this court affirmed the district court as to the evidence and attorneys' fees, but vacated the $300,000 punitive damages award. Applying the three factors found in *Gore*, the panel majority concluded that while ASARCO's conduct was reprehensible, the ratio of 300,000 to 1 between the punitive and nominal damages awards was excessive. *Arizona v. ASARCO LLC*, 733 F.3d 882, 885–92 (9th Cir. 2013). Citing to the highest ratio it could locate among discrimination cases, 125,000 to 1 in *Abner v. Kansas City S. R.R. Co.*, 513 F.3d 154, 164 (5th Cir. 2008), the majority reduced the award to $125,000. *ASARCO*, 733 F.3d at 891–92. Dissenting in part, Judge Hurwitz stated that he would affirm the entire $300,000 judgment in light of the applicable statutory cap, which provides employers with notice of the penalties they could face for Title VII violations. *Id.* at 892–93 (Hurwitz, J., concurring in part and dissenting in part).

Upon the majority vote of the active, non-recused judges of the court, we agreed to rehear this case en banc. *Arizona v. ASARCO LLC*, 755 F.3d 1044 (9th Cir. Feb. 28, 2014). We have jurisdiction under 28 U.S.C. § 1291. We apply "a *de novo* standard of review when passing on district courts' determinations of the constitutionality of punitive damages awards." *Cooper Indus. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 436 (2001). Even when a defendant makes a constitutional challenge to a punitive damages award, however, we defer to the district court's "findings of fact unless they are clearly erroneous." *Id.* at 440 n.14.

## II

Applying *Gore*, ASARCO argues that the district court erred in upholding the jury's punitive damages award, which the court then reduced to $300,000 because of the statutory cap on damages contained in § 1981a.  At oral argument, ASARCO argued the award should be reduced far below the $125,000 awarded by the three-judge panel, an amount which it contends is still constitutionally excessive.  ASARCO also argues the award should be reduced below the $2500 per offense punitive damages amount awarded in *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1120–23 (9th Cir. 2008).

## A

In *Gore*, the Supreme Court altered the legal punitive damages landscape, applying the Due Process Clause of the Fourteenth Amendment to a state court's $2 million punitive damages award (accompanying a $4000 compensatory damages award) arising from state common law claims, and concluding that the punitive damages amount was "grossly excessive" and therefore unconstitutional.  517 U.S. at 565–67, 574–75.  To assess the constitutionality of a state common law punitive damages award, the Court in *Gore* employed three guideposts, which it later summarized in *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 418 (2003), as follows: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases."  *Id.* (citing *Gore*, 517 U.S. at 575).

Under *Gore* and *State Farm,* the most important guidepost is reprehensibility. *State Farm* articulated several factors courts could consider in assessing the egregiousness of a defendant's conduct:

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*Id.* at 419.

As for the second factor–the disparity between the harm suffered by the plaintiff and the punitive damages award–the Court has repeatedly eschewed the adoption of a "bright-line ratio which a punitive damages award cannot exceed." *Id.* at 425. Nevertheless, the Court has noted that, "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Id.* The Court also cautioned, however, that a higher ratio may be appropriate where the conduct is especially egregious, but results in minimal economic damages. *Id.* (citing *Gore*, 517 U.S. at 582, for the proposition that economic awards may be small because the injury is hard to quantify or detect).

*Gore* is undeniably of some relevance in this context. *See, e.g.*, *Cooper Indus.*, 532 U.S. at 441–43 (applying *Gore* to a due process challenge to punitive damages awarded in a

federal Lanham Act suit); *Payne v. Jones*, 711 F.3d 85, 96–106 (2d Cir. 2013) (assessing a non-constitutional claim that a punitive damages award was excessive by, in part, looking to the *Gore* factors). Indeed, it is conceivable that even awards conferred under a carefully crafted statutory scheme governing punitive damages could fail to comport with due process.

Still, this case presents a different question than the Supreme Court considered in *Gore*. Here, Aguilar has asserted a claim under a statute, Title VII, which includes a carefully crafted provision, § 1981, that imposes a cap on punitive damages. The landscape of our review is different when we consider a punitive damages award arising from a statute that rigidly dictates the standard a jury must apply in awarding punitive damages and narrowly caps hard-to-quantify compensatory damages and punitive damages. *See Abner*, 513 F.3d at 16 (noting that, through § 1981a, "Congress has effectively set the tolerable proportion" in Title VII cases and that, because the statutory cap does not offend due process, "the three-factor *Gore* analysis" is irrelevant); *see generally* Joseph A. Seiner, *Punitive Damages, Due Process, and Employment Discrimination*, 97 Iowa L. Rev. 473, 490–94 (2012) (arguing that, after *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008), and in light of § 1981a, courts need not reach "the due process issues raised in *Gore* and *State Farm* when addressing employment discrimination claims brought under Title VII").

B

In resolving ASARCO's due process challenge in the Title VII context, we start with the constitutional concerns underlying the Court's due process analysis in *Gore* and *State*

*Farm*. First and foremost, the Court developed the *Gore* doctrine out of a concern that a defendant "receive fair notice not only of the conduct that will subject him to punishment, but also the severity of the penalty" that may be imposed. *Gore*, 517 U.S. at 574. The Court was also interested in avoiding arbitrary, biased, or ill-informed deprivation of property of defendants by juries when the statute or common law did not provide sufficient safeguards. *State Farm*, 538 U.S. at 416–18. The Court sought to uphold the deterrence function of punitive damages awards, while policing awards that exceed an amount necessary to deter future wrongdoing. *Gore*, 517 U.S. at 584.

In *Gore*, the Court also discussed the reasoning underlying each of its three guideposts. The Court noted that its reprehensibility guidepost attempts to align the punitive damages award with the severity of the wrongful act. *Id.* at 575–77. As for the ratio guidepost, the Court declined to apply a bright line rule, while acknowledging the general goal of making punitive damages proportional to the actual injury suffered. *Id.* at 582. The Court noted that the ratio could be higher if "the injury is hard to detect or the monetary value of noneconomic harm might [be] difficult to determine," and that the general aim of the ratio guidepost is "reasonableness." *Id.* at 582–83 (internal quotation marks omitted); *see also State Farm*, 538 U.S. at 425 ("[R]atios greater than those we have previously upheld may comport with due process where 'a particularly egregious act has resulted in only a small amount of economic damages.'" (quoting *Gore*, 517 U.S. at 582)). Finally, in articulating its third guidepost, directing courts to take into account analogous civil or criminal penalties for comparable misconduct, the Court highlighted the importance of according "substantial deference to legislative judgments

concerning appropriate sanctions for the conduct at issue." *Gore*, 517 U.S. at 583 (internal quotation marks omitted).

An exacting *Gore* review, applying the three guideposts rigorously, may be appropriate when reviewing a common law punitive damages award. However, when a punitive damages award arises from a robust statutory regime, the rigid application of the *Gore* guideposts is less necessary or appropriate. Thus, the more relevant first consideration is the statute itself, through which the legislature has spoken explicitly on the proper scope of punitive damages.

In some instances, a statute may leave gaps, or room, for the common law to shape the scope of punitive damages awards, within the boundaries of due process. *See, e.g.*, *Exxon*, 554 U.S. at 514–15 (adopting, in the area of federal maritime law, a 1 to 1 ratio between compensatory and punitive damages). But here, the statutory scheme leaves little to the imagination. *Cf. id.* at 516–17 (Stevens, J., concurring in part and dissenting in part) (arguing that, since federal maritime law is largely statutory, Congress's decision "*not* to restrict the availability of a particular remedy favors adherence to a policy of judicial restraint," and implicitly stating that the role of the court is equally, if not more, limited when Congress has reined in a remedy explicitly).

When we examine § 1981a, it becomes readily apparent why awards under the statute comport with due process. First, the statute clearly sets forth the type of conduct, and mind-set, a defendant must have to be found liable for punitive damages. 42 U.S.C. § 1981a(b)(1) ("A complaining party may recover punitive damages under this section against a respondent . . . if the complaining party demonstrates that the respondent engaged in a discriminatory

practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.").

Second, the statute sets a cap on certain types of compensatory damages, combined with punitive damages. 42 U.S.C. § 1981a(b)(3) (capping the "sum of the amount of compensatory damages awarded under this section for pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses," along with punitive damages). The cap tops out at $300,000 for employers having more than 500 employees, like ASARCO. *Id.* § 1981a(b)(3)(D). The cap drops down to as low as $50,000 for employers with more than 14, but fewer than 101, employees. *Id.* § 1981a(b)(3)(A).

These two aspects of the statute address *Gore*'s concern that defendants be on notice of what conduct might make them liable for punitive damages and the extent to which they might be held liable. The punitive damages provision codified at § 1981a was enacted in 1991. Since that time, employers have been on notice regarding the type of conduct that could subject them to liability, the level of mental culpability or intentionality required, and the dollar amount to which they could be subjected, if they violate the law. Seiner, *supra*, at 492 (noting that "the [punitive damages award] amendments to Title VII have been in place for two decades" and that "[e]mployers are on notice, then, that if they intentionally discriminate . . . they can be subjected to the punitive penalties set forth in" § 1981a).

Moreover, the statute dramatically reduces the chance of random, arbitrary awards, because the statute articulates the

degree of culpability that a defendant must have before being subject to liability and restricts damages awards to a range between $0 and $300,000. *Cush-Crawford v. Adchem Corp.*, 271 F.3d 352, 359 (2d Cir. 2001) ("To the extent that courts worried about unleashing juries to award limitless punitive damages in cases where no harm had occurred, this concern is eliminated by the imposition of the statutory caps."). Similarly, the odds of over-deterrence are low, given the statute's narrow circumscription of punitive damages awards. In sum, the general constitutional concerns underlying *Gore* are addressed by the provisions of § 1981a.

The same is true of *Gore*'s guidelines. Section 1981a satisfies *Gore*'s concern that conduct must be reprehensible by imposing an intent requirement that ensures jurors understand that only certain negative conduct should be penalized. In addition, the statutory scheme provides that conduct in violation of the statute, which subjects the employer to compensatory damages, does not necessarily compel a punitive damages award. 42 U.S.C. § 1981a(b)(1) (establishing an explicit requirement that punitive damages be awarded only if the defendant acted "with malice or with reckless indifference to the federally protected rights of an aggrieved individual").

*Gore*'s ratio analysis has little applicability in the Title VII context because  § 1981a governs punitive damages. When a statute narrowly describes the type of conduct subject to punitive liability, and reasonably caps that liability, it makes little sense to formalistically apply a ratio analysis devised for unrestricted state common law damages awards. That logic applies with special force here because the statute provides a consolidated cap on *both* compensatory and punitive damages. *See id.* § 1981a(b)(3) (applying the cap to

the sum of punitive damages and certain compensatory damages).     Under a *Gore* ratio analysis, the amount constitutionally available for a punitive damages award increases proportionately to the harm.   But § 1981a(b)(3) produces the opposite result:   as the award for specified compensatory damages increases, the amount available for a punitive damages award decreases—the greater the harm, the less the punitive damages award.     By establishing a consolidated damages cap that includes both specified compensatory and punitive damages, Congress supplanted traditional ratio theory and effectively obviated the need for a *Gore* ratio examination.

In addition, as the Fifth Circuit noted in *Abner*, 513 F.3d at 163, Title VII violations often result in injuries that are "difficult to quantify in physical terms."  When only nominal damages are awarded, application of a *Gore* ratio analysis is not appropriate.   *Id.* at 164 (concluding that in punitive damages cases where quantifiable compensatory damages are so impossible to calculate that only nominal damages are awarded, "a ratio-based inquiry becomes irrelevant").

"Nominal damages are not intended to compensate a plaintiff for injuries, nor to act as a measure of the severity of a defendant's wrongful conduct." *Cummings v. Connell*, 402 F.3d 936, 945 (9th Cir. 2005).  Because nominal damages measure neither damage nor severity of conduct, it is not appropriate to examine the ratio of a nominal damages award to a punitive damages award.[1]  *Saunders v. Branch Banking*

---

[1] In *Mendez*, we applied the ratio analysis despite the jury awarding only nominal and punitive damages, and no compensatory relief. 540 F.3d at 1117, 1120–23 (mentioning the difficulty of applying the *Gore* ratio analysis when only nominal damages were awarded).  The suit in *Mendez*

*& Trust Co. of Va.*, 526 F.3d 142, 154 (4th Cir. 2008) (noting that "when a jury only awards nominal damages . . . a punitive damages award may exceed the normal single digit ratio because a smaller amount would utterly fail to serve the traditional purposes" of punitive damages awards and stating that, in this case, the court would "not rely upon the challenged ratio" but instead compare this award "to other cases involving similar claims" (internal quotation marks omitted)); *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1016 & n.76 (5th Cir. 2003) (stating that "any punitive damages-to-*compensatory* damages 'ratio analysis' cannot be applied effectively in cases where only *nominal* damages have been awarded"); *Romanski v. Detroit Entm't, LLC*, 428 F.3d 629, 645 (6th Cir. 2005) (noting that in a § 1983 unlawful arrest case, the "plaintiff's economic injury was so minimal as to be essentially nominal" and that in such a case, the Supreme Court's precedent "on the ratio component of the excessiveness inquiry—which involved substantial compensatory damages awards for economic and measurable noneconomic harm—are therefore of limited relevance" (footnote omitted)).

Further, in this case, the nominal damages were capped. The jury was instructed that it could not award more than $1 in nominal damages. When compensatory or nominal damages are subject to a cap, there is no meaningful way to apply a *Gore* ratio analysis because the true harm is not measured.

---

arose under a different statutory scheme, however, since the case involved a 42 U.S.C. § 1983 suit. *Id.* at 1117. To the extent *Mendez* conflicts with this decision, we overrule it.

*Gore*'s third guidepost bolsters our conclusion that punitive damages awards conferred under the statutory scheme in this case do not violate due process. The purpose of the third guidepost is deference to reasoned legislative judgments. *Gore*, 517 U.S. at 583. Here, Congress has made a reasoned judgment not simply as to analogous criminal or civil penalties, but as to punitive damages awarded in cases like the one at hand. We need not search outside the statutory scheme Congress enacted for legislative guidance in other contexts.

Finally, we see no reversible error in the district court's conclusion that the record evidence justified a punitive damages award under the statute. As the Fifth Circuit noted in *Abner*, just because damages awards conferred under a certain statutory scheme comport with due process and *Gore* does not mean our constitutional analysis is at an end. We still must assess whether the district court was correct in concluding that the award met the requirements of the statutory scheme. *Abner*, 513 F.3d at 164 (concluding, in a Title VII hostile work environment case, that the statutory scheme in § 1981a comports with due process and that the court need not apply *Gore's* guideposts, but also stating that, "[a]ccepting this analysis makes the sufficiency of the evidence to support the statutory threshold a determinant of constitutional validity").

In its post-trial motions, ASARCO argued there was insufficient evidence presented at trial to support a punitive damages award under § 1981a. ASARCO claimed that even if it was properly liable under Title VII, it still did not act with the malice or recklessness required to award punitive damages under § 1981a(b). The district court rejected this argument below but ASARCO focused its appeal instead on

the district court's rejection of its *Gore* due process challenge to the *amount* of the punitive damages.

Even if we assume, given ASARCO's presentation of the facts and its argument regarding the reprehensibility of its own conduct, that ASARCO did not waive any challenge to the sufficiency of the evidence supporting an award of punitive damages, we still conclude that the district court did not err in granting $300,000 in punitive damages. In its decision, the district court noted that ASARCO did have an anti-discrimination policy in force. But it also recounted particular evidence in the record, specifically that ASARCO's management "did not provide prompt and effective remedial action" when made aware of Aguilar's complaints. Instead, the court pointed to evidence that ASARCO "treated Aguilar's claims dismissively, did nothing to investigate Aguilar's claims, or took steps that were not reasonably calculated to and did not stop the harassment." The court noted that, based on its evaluation of the evidence, ASARCO repeatedly, over the course of months, failed to adequately respond to discrete instances of harassment against Aguilar. Moreover, the court reasoned, because the evidence demonstrated that ASARCO "is a serial violator of antidiscrimination laws" (as evidenced by the sexually explicit graffiti targeting other employees), the deterrence aim of punitive damages awards warranted a significant award that would discourage future misconduct by ASARCO.

Our review of the record confirms that the district court did not clearly err in its assessment of the facts. Indeed, there is significant and compelling evidence that management was aware of, and did little to resolve, lewd, inappropriate, and sexually aggressive behavior directed to Aguilar; sexually explicit, targeted pictures of Aguilar on the walls of the

bathroom rented specifically for her use; and overly aggressive management and criticism of Aguilar by supervisors. Aguilar complained to management multiple times. The sexually explicit graffiti in the bathroom was not removed while she was working in the filter plant. As the district court correctly noted, to the extent ASARCO did have an antidiscrimination or harassment policy, the existence of such a policy alone is not enough to save it. *See Bains LLC v. Arco Prods. Co.*, 405 F.3d 764, 774 (9th Cir. 2005) ("A written antidiscrimination policy does not insulate a company from liability [under, in *Bains*, 42 U.S.C. § 1981, for punitive damages] if it does not enforce the antidiscrimination policy and, by its actions, supports discrimination."). Further, the award is consistent with, and in some cases smaller than, punitive damages awards in other Title VII and 42 U.S.C. § 1981 cases we have considered. *See, e.g., Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1045 (9th Cir. 2003) (upholding a $2.6 million punitive damages award in response in a § 1981 racial discrimination case); *Swinton v. Potomac Corp.*, 270 F.3d 794, 817–20 (9th Cir. 2001) (upholding $1 million discrimination award).

In sum, we conclude that punitive damages awards conferred under § 1981a comport with due process. The statute provides specific notice of proscribed conduct. It specifies the maximum amount of damages that can be awarded, and incorporates both specified compensatory and punitive damages within the cap. The $300,000 dollar amount of the cap provides an extremely limited potential for recovery, and has not changed, nor been adjusted for inflation, since its adoption in 1991. There is nothing in our consideration of the *Gore* factors that would alter that conclusion. The record supports the district court's conclusion that the punitive award was made in conformance

with the statute and was not otherwise in violation of due process.

III

A

ASARCO also challenges the district court's admission of evidence of other sexually explicit graffiti in bathrooms that was similar to the sexually explicit graffiti directed to Aguilar.

We review "for abuse of discretion a district court's decision to admit evidence," reversing only if we are "convinced firmly that the reviewed decision lies beyond the pale of reasonable justification under the circumstances." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 953 (9th Cir. 2011) (internal quotation marks omitted). To obtain reversal of an evidentiary ruling, ASARCO "must show that the error was prejudicial, and that the verdict was more probably than not affected as a result." *Id.* (internal quotation marks omitted). ASARCO argues evidence that sexually explicit graffiti was also targeted at the other employees was too factually dissimilar and temporally remote from Aguilar's experience and that, as a result, the evidence was more prejudicial than probative under Federal Rule of Evidence 403.

We disagree. Any prejudice to ASARCO was limited by the circumscribed nature of the evidence and the limiting instruction given by the district court. The evidence had probative value in helping the jury assess whether Aguilar had proved the elements of harassment. Moreover, contrary

to ASARCO's assertion, this evidence formed only a small part of the evidence presented by Aguilar.

Thus, under our deferential standard of review, we conclude that the district court did not abuse its discretion in narrowly admitting this evidence. *Tennison v. Circus Circus Enters., Inc.*, 244 F.3d 684, 689–90 (9th Cir. 2001) (noting that a district court "enjoys considerable discretion" in determining whether harassment of employees other than the victim is more prejudicial than probative).

B

Finally, ASARCO challenges the court's decision to grant Aguilar's motion for $350,902.75 in attorneys' fees and costs. "Awards of attorney's fees are generally reviewed for abuse of discretion." *Thomas v. City of Tacoma*, 410 F.3d 644, 647 (9th Cir. 2005). Discretionary review, however, is only applied if the court is "satisfied that the correct legal standard was applied and that none of the district court's findings of fact were clearly erroneous." *Id.* Citing *Farrar v. Hobby*, 506 U.S. 103 (1992), ASARCO argues Aguilar is not eligible for attorneys' fees because she achieved little to no success before the district court. ASARCO points out that Aguilar only succeeded on one of her claims and that she received nominal, but not compensatory, damages, arguing she won little more than "the moral satisfaction of knowing that a federal court concluded that [her] rights had been violated." *Farrar*, 506 U.S. at 114 (internal quotation marks omitted).

We conclude that the district court did not abuse its discretion in granting the attorneys' fees motion. First, given the overlap between Aguilar's harassment claim and her other claims, ASARCO's argument that she prevailed on merely

one claim is incorrect. *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 517–18 (9th Cir. 2000) ("Although Passantino did not prevail on her discrimination claims or her claim for injunctive relief, she prevailed on her retaliation claims, which were inextricably intertwined with her discrimination claims."). More importantly, even if Aguilar was only awarded nominal, and not compensatory, damages, any analogy to *Farrar* disappears because, unlike in that case, Aguilar was awarded almost $900,000 in punitive damages from the jury, and was ultimately granted $300,000 in punitive damages from the district court. *Compare Farrar*, 506 U.S. at 107 (noting that the jury awarded the plaintiffs nothing). We affirm the district court's grant of attorneys' fees.

IV

Because its provisions meet the constitutional concerns underlying *Gore*, we conclude that § 1981a's punitive damages regime comports with due process. As a result, and due to the circumstances of this case, including the fact that the jury awarded only nominal, and not compensatory damages, we also decline to rigidly apply *Gore*'s three guideposts to the award in this case. Because the governing statute comports with due process, the district court did not err in concluding sufficient evidence supported a punitive damages award of any amount in this case, and the award here complies with the strictures of the statute, we affirm the district court's conclusion that the $300,000 award does not violate due process. In addition, exercising our supervisory power, we also conclude the award was not excessive and the district court did not abuse its discretion in allowing it. Finally, we affirm the district court as to the admission of

other evidence of sexually explicit graffiti and as to the award of attorneys' fees.

**AFFIRMED.**