*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 17-CV-1422 & 18-CV-167

ALISHA GORDON, APPELLANT,

V.

NADINE RICE, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAB-5579-15)

(Hon. Michael Rankin, Trial Judge)

(Submitted June 20, 2019                    Decided October 14, 2021)

*Alisha Gordon*, pro se.

*Nadine Rice, pro se.*

Before BECKWITH, *Associate Judge*, and NEBEKER and FISHER, *Senior Judges.**

---

* Judge Fisher was an Associate Judge at the time of submission. His status changed to Senior Judge on August 23, 2020.

BECKWITH, *Associate Judge*:  A jury found that appellant Alisha Gordon committed an assault and battery on appellee Nadine Rice and awarded Ms. Rice compensatory damages of $337 and punitive damages of $150,000, which the trial court remitted to $33,363.  On appeal, Ms. Gordon argues that the remitted award is unconstitutionally excessive in light of the Supreme Court's admonition that "few awards exceeding a single-digit ratio between punitive and compensatory damages . . . will satisfy due process."  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003).  Because we cannot meaningfully review the trial court's remitted award to ensure that it comports with due process, we remand this case to the trial court to reconsider the award in light of this opinion.

## I.

Appellee Nadine Rice filed a complaint against appellant Alisha Gordon and a codefendant, William Byrd, for assault, battery, and intentional infliction of emotional distress (IIED) after a physical altercation among the three of them in the hallway of their shared apartment complex.  In her amended complaint, Ms. Rice alleged the following.  As Ms. Rice was walking up the stairs to her apartment, Ms. Gordon and Mr. Byrd started to yell at her and prevented her from going into the apartment.  Ms. Gordon pepper sprayed Ms. Rice while Mr. Byrd watched, then Mr.

Byrd wrestled Ms. Rice to the ground. Ms. Gordon stomped on Ms. Rice and used the apartment door to strike Ms. Rice while she was on the ground. Finally, Ms. Rice's complaint alleged that Mr. Byrd and Ms. Gordon gave false statements to police officers that resulted in her arrest and prosecution for unlawful entry and assault. Ms. Rice was ultimately acquitted of those charges.

The case proceeded to trial on the assault and battery claims after the trial court dismissed Ms. Rice's IIED claim for lack of evidence that Ms. Gordon and Mr. Byrd's conduct was outrageous. A set of videos of the incident introduced at trial showed Ms. Rice charging through the door into Mr. Byrd and Ms. Gordon's apartment after the three argued, Mr. Byrd attempting to restrain her and push her out, Ms. Gordon kicking Ms. Rice while Mr. Byrd restrained her on the ground, and finally Ms. Gordon shutting the door and leaning on it while Ms. Rice was lying in the threshold.[1]

The jury concluded that Ms. Gordon committed assault and battery without justification[2] and awarded Ms. Rice $337 in compensatory damages and $150,000

---

[1] Ms. Gordon has not provided the court with transcripts of the bulk of the trial testimony.

[2] The jury found that Mr. Byrd also committed battery but determined that his actions were justified as self-defense.

in punitive damages, a 445:1 ratio. Ms. Gordon moved for remittitur, requesting a punitive damages award of $3,370 or less. The trial court granted Ms. Gordon's motion in part and remitted Ms. Gordon's damages to $33,363, or a 99:1 ratio. Ms. Gordon appealed both the jury's verdict and the remitted award, and we consolidated the appeals.[3]

## II.

Ms. Gordon argues that the evidence in this case did not support the assessment of punitive damages against her and that, even if it did, the trial court's remitted award of $33,363 is still unconstitutionally excessive on its face under *State Farm*, 538 U.S. at 425.[4] We address these arguments in turn.

---

[3] Ms. Rice also filed an appeal, but she later dismissed it voluntarily.

[4] Ms. Gordon also makes two arguments regarding evidentiary and instructional rulings at her trial: that it was improper to admit Ms. Rice's testimony regarding her arrest, incarceration, and prosecution for unlawful entry and that the court should not have instructed the jury that it could award Ms. Rice damages for emotional distress because the emotional distress claim had already been dismissed. But as Ms. Gordon admits, she has not provided the transcripts that would show what Ms. Rice testified to at trial. Under D.C. App. R. 28(a)(10)(A), the appellant's brief must contain the appellant's "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." And under D.C. App. R. 10(b)(1), the appellant has the duty to order transcripts of "such parts of the proceedings not already on file as the appellant considers

"[I]n order to sustain an award of punitive damages, the plaintiff must prove, by a preponderance of the evidence, that the defendant committed a tortious act, and by clear and convincing evidence that the act was accompanied by conduct and a state of mind evincing malice or its equivalent." *Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 938 (D.C. 1995). We review the trial court's determination that there was a triable claim for punitive damages for abuse of discretion. *See Tolson v. District of Columbia*, 860 A.2d 336, 345 (D.C. 2004).

We perceive no flaws in the court's conclusion that Ms. Gordon's conduct was sufficiently intentional and reprehensible to warrant sending the question of punitive damages to the jury. In its order on Ms. Gordon's remittitur motion, the court noted several facts that supported this finding, including that Ms. Gordon removed herself from the initial scuffle to retrieve the pepper spray from her apartment, sprayed Ms. Rice multiple times in the face, stomped and kicked Ms. Rice while Mr. Byrd was holding her down, and slammed the apartment door on Ms.

---

necessary." It is impossible to assess if and how Ms. Rice's testimony was inflammatory without seeing her testimony. Because it would also be next to impossible to determine the prejudicial effect of the emotional distress instruction without having a full view of whether and how Ms. Rice's emotional distress was presented to the jury, we need not determine whether that instruction was given in error. Ms. Gordon has failed to demonstrate that either of these claims warrants reversal.

Rice's body, all while Ms. Rice was restrained on the ground by Mr. Byrd and otherwise defenseless. The trial court was "considerably better positioned than are we to assess the gravity of [Ms. Gordon's] wrongdoing" in determining whether the evidence was "sufficient to sustain an award of punitive damages." *Daka, Inc. v. McCrae*, 839 A.2d 682, 696 (D.C. 2003). It did not abuse its discretion in submitting the issue of punitive damages to the jury.

Even when punitive damages are in order, however, a punitive damages award must comport with due process, which "prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." *State Farm*, 538 U.S. at 427. The Supreme Court has identified three "guideposts"—which we will refer to as the *Gore* factors—for reviewing courts to assess the constitutionality of a punitive damages award:

> (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*Id.* at 418 (citing *BMW of N. Am. v. Gore*, 517 U.S. 559, 575 (1996)); *see also McCrae*, 839 A.2d at 697. We conduct de novo review of a trial court's application of these guideposts to a challenged award. *McCrae*, 839 A.2d at 697. Because

"[p]unitive damages pose an acute danger of arbitrary deprivation of property," *State Farm*, 538 U.S. at 417 (internal quotation marks omitted), we have considered it "critical" that "courts conduct meaningful and adequate review of punitive damages awards," *Modern Mgmt. Co. v. Wilson*, 997 A.2d 37, 46 (D.C. 2010).

The trial court applied these principles to determine that the jury's punitive damages award of $150,000 was excessive. With regard to the first *Gore* factor, the court concluded that Ms. Gordon's conduct was "on the low end of the reprehensibility scale." In assessing the second factor, the court found that a ratio of punitive to compensatory damages of 445:1 was high enough to "raise[ ] th[e] court's judicial eyebrow." Because it recognized that higher ratios can nevertheless be justified where low compensatory damages fail to reflect the harm caused or the jurisdiction's interest in deterrence, the court assessed the actual harm and the harm likely to result from the conduct at issue in the case, finding both on the "low end of the scale." It also concluded that a higher ratio of punitive to compensatory damages could not be justified based on deterrence needs stemming from Ms. Gordon's wealth, given that evidence of net worth was not sufficiently provided at trial.[5]

---

[5] Ms. Gordon argues that the punitive damages verdict cannot stand because Ms. Rice failed to establish net worth. It is true that "where a plaintiff seeks to recover punitive damages based on the wealth of the defendant, proof of the defendant's current net worth is required." *Jonathan Woodner Co.*, 665 A.2d at 932.

When it came to the third *Gore* factor, the trial court "reviewed punitive damages awards in similar civil actions in the District of Columbia" going back to the year 2000. From this search, it concluded that the most analogous case was one in which the jury awarded $2,250 in punitive damages and $150 in compensatory damages—a 15:1 ratio—to a plaintiff it found had been [battered] by a defendant who backed his car into the plaintiff twice.[6] It also noted that the maximum criminal fine for the conduct at issue—assuming Ms. Rice suffered "significant bodily injury"—would be $12,500. The trial court thus found that all three *Gore* factors weighed against the jury's punitive damages award of $150,000.

---

Given that the trial court expressly disclaimed reliance on Ms. Gordon's net worth in setting the remitted award, however, we see no error here. *See id.* at 941 n.19 ("[N]et worth is only one of several considerations relevant to a punitive damages determination."). Although Ms. Gordon has argued that there was insufficient evidence of her net worth to permit an award based in part on her wealth, she has not challenged the award based on inability to pay.

[6] In finding this case most similar, the trial court also considered a case in which the jury awarded $137,000 in punitive damages against a defendant who had choked a coworker, slammed her head into a filing cabinet, and struck her multiple times, causing a broken eye socket, a broken nose, and closed head trauma, and a case in which punitive damage awards of $15,000 to $30,000 were assessed against "police officers who threw objects across a restaurant, acted after 'essentially no provocation,' made derogatory comments about the plaintiffs while assaulting them, and consumed alcohol to the point of intoxication, while armed, then brawled in a crowded restaurant"—conduct the trial court found "more egregious" than Ms. Gordon's.

The trial court then proceeded to determine the "maximum tolerable award." *See Carter v. District of Columbia*, 795 F.2d 116, 135 n.13 (D.C. Cir. 1986) ("Because the seventh amendment right to jury trial pervades the atmosphere, it is appropriate to set a remittitur so as to permit recovery of the highest amount the jury tolerably could have awarded."). It determined that the maximum punitive damages award that would comport with due process was one having a double-digit ratio to the compensatory damages award, and so set the award ninety-nine times higher than the compensatory damages.

We must consider whether, as Ms. Gordon contends, the remitted award of $33,363 is itself constitutionally excessive. The trial court did not justify its remitted award using the *Gore* factors. And while we do not suggest that doing so is required of a court remitting an award, we ultimately do not find it possible to conduct "meaningful and adequate review" on this record given that—as we will next explain—much of the trial court's *Gore* analysis would seem to support an even lower award. *Cf. Louison v. Crockett*, 546 A.2d 400, 405–07 (D.C. 1998) (reviewing trial court's decision denying remittitur of compensatory damages award in negligence action under abuse of discretion standard and remanding because "the record on its face provides questionable support for the verdict, and elucidation by the trial court might clarify the matter").

The Supreme Court has called the degree of reprehensibility of the defendant's conduct the "most import indicium of the reasonableness of a punitive damages award." *Gore*, 517 U.S. at 575. By the trial court's own assessment, this was a case "on the low end of the reprehensibility scale" when accounting only for that harm that was established at trial and could properly be accounted for in the punitive damages determination. It noted that the attack was a one-off incident, was not "prolonged or sustained," was the result of an "eruption of tensions" as opposed to a "planned attack," and did not "create a substantial danger to innocent bystanders." This does not indicate that the trial court saw Ms. Gordon's conduct as the sort of "particularly egregious act" that can support a punitive damages award that greatly exceeds the compensatory damages. *See id.* at 582 ("[L]ow awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages.").

Although there is no bright-line rule governing the ratio between punitive and compensatory damages, "[s]ingle-digit multipliers are more likely to comport with due process," and "few awards exceeding [that] ratio . . . [by] a significant degree" will be constitutionally permissible. *State Farm*, 538 U.S. at 425. We have recognized, however, that some circumstances may justify higher—and perhaps

even significantly higher—ratios. For example, higher ratios may "comport with due process where 'a particularly egregious act has resulted in only a small amount of economic damages.'" *McCrae*, 839 A.2d at 698 n.18 (quoting *State Farm*, 538 U.S. at 410). *Compare Daka, Inc. v. Breiner*, 711 A.2d 86 (D.C. 1998) (upholding punitive damages award thirty-nine times greater than the compensatory damages award in a workplace discrimination case), *with McCrae*, 839 A.2d at 699 (reversing punitive damages award twenty-six times greater than the compensatory damages award in subsequent workplace discrimination case against the same company as in *Breiner* and distinguishing the even higher ratio found constitutionally permissible there in part because "the plaintiff was awarded 'substantial' compensatory damages . . . , almost nineteen times greater than the compensatory damages awarded for similar emotional injury in [*Breiner*]").

The trial court gave three reasons for not remitting the award to a single-digit multiplier. First, it concluded that "reducing [Ms. Rice's] punitive damages to achieve a single-digit ratio [was] not warranted" in light of the "substantially low" compensatory damages award. This may be the case, but the trial court did not then provide a rationale for arriving at the highest possible double-digit-multiplier award. The trial court's own order does not suggest that it saw this as a case in which the compensatory damages were on the low end of what the jury could have awarded

given the harm established at trial.[7] *Cf. Howard Univ. v. Wilkins*, 22 A.3d 774, 784 (D.C. 2011) (finding, in upholding punitive damages award of $42,677.50 that, "had the jury awarded $42,677.50 in *compensatory* damages, it would have seemed entirely reasonable—perhaps modest—in light of the evidence"). Nor is this a case in which only nominal damages were awarded. *Cf. id.*; *cf. also Arizona v. ASARCO LLC*, 773 F.3d 1050, 1058 (9th Cir. 2014) (collecting cases from various jurisdictions finding ratio assessment under *Gore*'s second guidepost inapposite in nominal damages cases). Although it is true that deterrence interests may justify higher punitive damages awards where compensatory damages alone would fail to serve that function, nothing in the trial court's order suggests that a punitive damages award less than ninety-nine times the compensatory damages would not provide adequate deterrence.[8]

Second, the trial court noted that Ms. Rice's "harm—specifically, her humiliation and indignation, is difficult for a jury [to] quantify." *See Modern Mgmt.*,

---

[7] The trial court found that the only compensable harm consisted of "physical injuries and garden variety emotional distress flowing from the assault and battery." The only physical injuries Ms. Rice alleged in her complaint were bruises and lacerations, but her complaint does state that she "was taken to Providence Hospital to be treated for her injuries."

[8] This is especially so in light of what the District has deemed adequate deterrence in criminal cases involving analogous conduct. *See infra*.

997 A.2d at 57–58 ("A higher ratio may also be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine."). The trial court had determined that the only emotional harm that could be accounted for in the damages assessment was "garden variety emotional distress." We fail to see, at least on the record before us, how this sort of harm—difficult to quantify as it may be—can take this case out of the presumptive single-digit-ratio range.

Third, the trial court found it "likely that the jury's assessment of [Ms. Gordon's] malice toward [Ms. Rice] was influenced by comments [Ms. Gordon] made, during her opening statement, that [Ms. Rice] consumes illegal drugs, as well as [Ms. Gordon's] reference to a particularly sensitive trauma [Ms. Rice] endured years ago, which bore no relationship to the issues at bar." The Supreme Court has made clear that "[a] defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages." *State Farm*, 538 U.S. at 422. To the extent the award punishes Ms. Gordon for the cruelty of a comment made during trial—and thus conduct unrelated to the conduct for which she was found liable—it is not permissible under *State Farm*. If, on the other hand, Ms. Gordon's conduct at trial created a credibility issue as to her malice toward Ms. Rice during the incident, we would defer to the trial court's assessment

that a jury could reasonably have found the conduct at issue more reprehensible than it might otherwise have. *Howard Univ.*, 22 A.3d at 782 ("Because [the reprehensibility analysis] may 'turn[ ] on witness credibility and demeanor,' trial courts 'have a somewhat superior vantage over courts of appeals.'" (quoting *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 440 (2001))). Because we cannot determine how Ms. Gordon's conduct at trial factored into the award, we are left with a concern that she may have been improperly punished for that conduct.

Finally, with regard to the third *Gore* factor, other civil and criminal penalties suggest the remitted award may still pose constitutional concerns. The trial court found Ms. Gordon's conduct most analogous to assault under D.C. Code § 22-404. Had Ms. Gordon been criminally charged with felony assault under that provision, she would have faced a maximum fine of $12,500. *See* D.C. Code §§ 22-404(a)(2), 22-3571.01 (2021 Supp.). That fine would only apply if Ms. Gordon "intentionally, knowingly, or recklessly cause[d] significant bodily injury," meaning "an injury that requires hospitalization or immediate medical attention." *See* D.C. Code §§ 22-404(a)(2), 22-3571.01 (2021 Supp.). Otherwise, the maximum fine would be $1,000.[9] *See* D.C. Code §§ 22-404(a)(1), 22-3571.01 (2021 Supp.). Although these

---

[9] The trial court's order mistakenly concludes that the maximum fine for simple assault not resulting in significant bodily injury would be $2,500. The trial

fines could also be accompanied by a term of imprisonment, an additional measure of punishment and deterrence and one that increases the difficulty of comparing this case to others, the fines that would apply in the criminal context indicate "the seriousness with which [the legislature] views the wrongful action." *Modern Mgmt.*, 997 A.2d at 59–60 (alteration in original) (quoting *State Farm*, 538 U.S. at 428).[10] Thus, we "accord substantial deference to legislative judgments concerning appropriate sanctions for the conduct at issue," which helps ensure that punitive damages awards are not arbitrary. *Id.* (quoting *Gore*, 517 U.S. at 583). We do not suggest that a punitive damages award exceeding the maximum possible criminal fine by this amount is always constitutionally suspect. But in light of the other indicators here that the award is excessive, the fact that the District has found a substantially lower fine sufficient to fulfill its interests in deterrence and punishment

---

court did not determine whether Ms. Gordon's conduct was most analogous to simple assault (carrying a $1,000 maximum fine) or felony assault (carrying a $12,500 maximum fine).

[10] For felony assault under D.C. Code § 22-404(a)(2), one can be "fined not more than [$12,500] or be imprisoned not more than 3 years, *or both*." *Id.* (emphasis added); *see also* D.C. Code § 22-3571.01. For simple assault under D.C. Code § 22-404(a)(1), one can be "fined not more than [$1,000] or be imprisoned not more than 180 days, *or both*." *Id.* (emphasis added); *see also* D.C. Code § 22-3571.01.

makes us hesitant to affirm on this record.[11]

The trial court reasonably applied the *Gore* factors to justify remitting the jury award and took care to articulate its reasoning. The record does not, however, indicate the court's justification for setting such a high award—one that the guideposts suggest may be excessive. In the absence of such a justification and because much of the trial court's reasoning supporting its conclusion to remit the award at least ostensibly supports remitting it even further, we are unable to meaningfully review the excessiveness of the remitted award.

---

[11] This is especially so given that the trial court itself found a civil case resulting in a $2,250 punitive damages award—fifteen times higher than the compensatory damages of $150—most similar to this case in terms of conduct and reprehensibility. The fact-specific nature of the inquiry into the excessiveness of punitive damages—and the fact that the punitive damages award there was not necessarily the highest award that would comport with due process—means that we afford limited weight to that figure as a comparative matter. *See Modern Mgmt.*, 997 A.2d at 25. Nevertheless, the trial court's analysis of other civil jury verdicts is further indication of its view of the reprehensibility of Ms. Gordon's conduct, a view seemingly in tension with the 99:1 remitted award.

We also note that the jury did not find Ms. Gordon's codefendant liable for assault and battery because the jury concluded that Mr. Byrd acted in self-defense after Ms. Rice tried to charge into the apartment. Though the jury could reasonably conclude that Ms. Gordon's conduct did not likewise constitute self-defense, this particular circumstance by no means bolsters the argument for a high punitive damages award.

For the foregoing reasons, we vacate the trial court's remitted punitive damages award and remand this case to allow the trial court to reconsider the award in light of this opinion or issue findings explaining the reasoning supporting the 99:1 award.[12]

*So ordered.*

---

[12] Ms. Gordon also argues that the trial court erred by failing to offer her the alternative of a new trial when it remitted the award. Ms. Gordon's argument is misplaced, as the right to a new trial instead of accepting a remitted damages award is a right that can only be exercised by the prevailing party, namely the plaintiff, "[t]o avoid violating the Seventh Amendment." *See Phillips v. District of Columbia*, 458 A.2d 722, 724 (D.C. 1983).